Stephen M. Sherwood, Administrator, etc., Appellant, *v.* The Agricultural Insurance Company of Water-town, N. Y., Respondent.

A policy of fire insurance contained a provision declaring it void "if, without the written consent of the company first had and obtained, the said property shall be sold or conveyed, or the interest of the parties therein be changed in any manner, whether by the act of parties or by operation of law." The insured died leaving a will devising and bequeathing his estate, real and personal, and thereafter a loss occurred.

In an action upon the policy, *held*, that there was a change of interest, within the meaning of the provision, which avoided the policy.

*Wyman* v. *Wyman* (26 N. Y., 253); *Burbank* v. *Rockingham Mut. Fire Ins. Co.* (24 N. H., 550), distinguished.

(Argued February 14, 1878; decided April 23, 1878.)

Appeal from order of the General Term of the Supreme Court in the second judicial department, reversing a judgment

in favor of plaintiff, entered upon a decision of the court on trial without a jury. (Reported below, 10 Hun, 593.)

This action was brought by plaintiff as special administrator or collector of the estate of C. Liston Brown, deceased, upon two policies of insurance issued by defendant to said Brown in his lifetime upon his dwelling-house and household furniture.

The policies each contained this clause : "If any other insurance has been, or shall hereafter be, made upon the property hereby insured, not consented to by this company in writing hereon ; or if, without the written consent of the company first had and obtained, the said property shall be sold or conveyed, or the interest of the parties therein be changed in any manner, whether by act of the parties, or by operation of law, or the property shall become incumbered by mortgage, judgment or otherwise, then, and in every such case, and in either of said events, this policy shall be null and void."

The policies were three year policies, one issued in November, 1870, the other in April, 1872. The assured died in November, 1872, leaving a will by which, after two small legacies, he devised and bequeathed all his estate, real and personal, to his four brothers, three of whom, including the one appointed executor, were non-residents.

The property insured was destroyed by fire in August, 1874, previous to which two of the brothers, one of them the executor, had died. Proofs of loss were furnished February 20, 1875. Plaintiff was appointed special administrator in June, 1875.

*M. L. Cobb,* for appellant.

*A. H. Sawyer,* for respondent. There was such a change of title in the insured property as rendered the policy void. (*Lappin* v. *Charter Oak Ins. Co.,* 58 Barb., 325, 344; *Burbank* v. *Rock. Ins. Co.,* 24 N. H., 550; 3 Bennett's F. Ins. Cas., 367.)

RAPALLO, J.   At the time of the loss the interest of C. Liston Brown, the assured, in the buildings destroyed had passed nearly two years previously to his four brothers, under the devise in his will.   Two of these brothers had died, and their interests had passed to their heirs or devisees. Some of the parties were residents of Virginia.   The title to the personal property was probably in Lewis Rooker, administrator, with the will annexed of the assured.   The point whether this action could be maintained by the administrator to recover for the damage to the real estate has not been raised, and therefore will not be considered.   The defense rested principally upon the provision in the policy that, " if without the written consent of this company first had and obtained, the said property shall be sold or conveyed, or the interest of the parties therein be changed in any manner, whether by act of the parties or by operation of law; or the property shall become incumbered by mortgage, judgment or otherwise,   *   *   *   then, and in every such case, and in either of said events this policy shall be null and void."

It cannot be disputed that the interest of the assured was entirely changed before any loss accrued.   The realty had passed to his devisees, the personalty to his executor or administrator.   This change was produced in part by the act of the party, which took effect on his death, and in part by operation of law.   The parties now claiming to be insured are entirely different from the one with whom the company contracted, and it is scarcely possible to conceive a more thorough change of interest or one which would more seriously affect the care of the property, some of those interested at the time of the loss being non-residents, and others, persons acting in a representative capacity.

It is claimed, however, that the change of interest having resulted from the death of the assured, is not within this provision, because the clause provides against alienations or change of interest without the previous consent of the company, and that language is inapplicable to the case of death. This argument is used to distinguish the present case from

that of *Lappin* v. *Charter Oak Insurance Company* (58 Barb., 325), and is, in substance, the only argument used in answer to the objection of change of interest. We think this argument is based upon a misconstruction of the clause referred to, and that the words "without the written consent of this company," etc., were not used in connection with all the changes of interest provided against. A change of interest, by operation of law, for instance, is expressly provided against; but it cannot be supposed that it was intended to connect with this the words, "without the written consent of the company first had and obtained," and very clearly it cannot be supposed that these words are connected with the provision against the property being incumbered by judgment or otherwise. There would be no more reason for expecting a man to obtain the consent of the company to the recovery of a judgment against him, than to a change of interest expected to be produced by his death. We think that the policy intended to provide against any and all changes of interest, and classified them into, first, a sale or conveyance without previous written consent; second, a change of interest in any other manner, including a change by operation of law as well as by act of the party; third, the property becoming incumbered by mortgage, judgment or otherwise. To some of these changes the language, "without previous consent," etc., could be appropriately applied, and to others not; but it is quite plain that the changes which would avoid the policy were not confined to those to which the provision for previous consent was appropriate.

It is urged that if a change of interest, produced by death, avoids the policy, a hard case might occur, as, if a fire should happen immediately after the death of the assured and before his heirs, devisees or representatives had time to insure their interests. Such a case is possible. The present one, however, presents no such hardship, for here the successors in interest had nearly two years before the fire in which to insure their interests, and they certainly did not rely on the insurance obtained by the deceased in his life-time, for

they did not discover it until more than two years after his decease, and five months after the fire. This case is not, therefore, embarrassed by any apparent hardship. But even if such hardship existed, it could not govern the construction of the policy. The proper mode of guarding against it would be by a provision in the contract.

The cases of *Wyman* v. *Wyman* (26 N. Y., 253), and *Burbank* v. *Rockingham Mut. Fire Ins. Co.* (24 N. H., 550) do not conflict, but are in accord, with the views above expressed. In *Wyman* v. *Wyman*, the condition was against a transfer of the interest of the assured in the policy ; there was none against a change of interest in the property insured, and the court rested upon that distinction. Furthermore, the company set up no such defense. In the New Hampshire case (24 N. H., 550) the provision was that the policy should become void if the property insured should be *alienated* by sale or otherwise, and it was held that the death of the deceased intestate did not work an *alienation*. The decision rests on the definition of the term "*alienate*," and the opinion of this court concedes that a devise would have been an alienation, and observes that the devisee could at once insure, on the death of the testator, in the case of real estate.

No authority is cited which supports the claim of the plaintiff, and we do not think it can be sustained on principle. The further defense, that due notice of the loss was not given, presents questions which we do not consider it necessary now to pass upon. The language of this policy, as to notice and proofs of loss, and the circumstances under which the action was delayed, are peculiar, and a determination of that branch of the case would not be valuable as a precedent. Inasmuch as the point already discussed is sufficient to dispose of the case, we will not go into the other.

The order should be affirmed and judgment absolute rendered against the plaintiff on his stipulation.

All concur, except CHURCH, Ch. J., and MILLER, J., not voting.

Order affirmed, and judgment accordingly.