Joseph B. Miller et al. v. The German Insurance Co. of Freeport.

1. INSURANCE—*Change of Title—Death of Insured Avoids the Policy.* —Under an insurance policy containing a provision that in case of a change of title to the property insured or any part thereof, or any interest therein, without the consent of the company indorsed thereon, the policy should at once cease to be binding upon the company, *it was held* that the death of the insured effected such a change of title to the property, and operated to forfeit the policy.

Memorandum.—Action on a policy of insurance. Appeal from the Circuit Court of Hardin County; the Hon. ALONZO K. VICKERS, Judge, presiding. Heard in this court at the February term, 1894, and affirmed. Opinion filed June 23, 1894.

APPELLANTS' BRIEF, MR. W. S. MORRIS AND L. F. PLATER, ATTORNEYS.

Appellants contended that where an insurance policy contains a clause inserted to defeat its operation in case of alienation or sale, the death of the assured intestate will not avoid it. Burbank v. Rockingham M. F. I. Co., 24 N. Y. 558.

Alienation differs from descent in this, that alienation is effected by a voluntary act, while descent is the legal result

of the death of the owner, and is not changed by any previous act or violation of the owner.     Burbank v. Burlington M. F. I. Co., 24 N. H. 558.

Appellants also cited as sustaining the principle, the following cases:  Lockwood v. Middlesex Mut. Assur. Co., 47 Conn. 553; Ayers v. Hartford Ins. Co., 17 Iowa, 176; S. C., 21 Iowa 193; Lane v. Maine Mut. Fire Ins. Co., 12 Me. 44.

Or where the property descends to heirs.    Burbank v. Rockingham Ins. Co., 4 Fost. (N. H.) 550; Georgia Home Ins. Co. v. Kinnier, 28 Gratt. (Va.) 88; 7 English and American Encyclopædia of Law, 1029, note 2.

APPELLEE'S BRIEF, WHITNEL & GILLESPIE, ATTORNEYS.

Descent. to heirs is a change of title to the property, and avoids policy.  Lappin v. Charter Oak Ins. Co., 58 Barb. (N. Y.) 325; Hine v. Receiver of Homestead Fire Ins. Co., 13 Ins. Law Journal, 71; Hine v. Receiver of Homestead Fire Ins. Co., 93 N. Y. 75; Sherwood v. The Agricultural Ins. Co., 73 N. Y. 447; Sherwood v. The Agricultural Ins. Co., 29 Am. Rep. 180; Wood on Insurance, Vol. 1, p. 712, Sec. 340; Wait's Actions and Defenses, Vol. 4, p. 53; Wyman v. Wyman, 26 N. Y. 253; Quarrels v. Clayton Ins. Law Journal, Oct. '89, p. 744; (a Tennessee opinion, Feb. 12, '89); 10 S. W. Rep. 505; Starr & Curtis' Statutes, Vol. 1, Chap. 38, p. 879.

Any material change in title, though not by alienation, will avoid insurance policy, which provides that any alteration or change in the title shall avoid it.    Barnes v. Union Mut. Fire Ins. Co., 51 Me. 110; Barnes v. Union Mut. Fire Ins. Co., 81 Am. Dec. 562; Edmunds v. Mutual Safety Fire Ins. Co., 79 Am. Dec. 746; Morrison v. Tenn. Marine Ins. Co., 59 Am. Dec. 299 (note at bottom of p. 308 to the case last cited); Dix et al. v. Mercantile Ins. Co., 22 Ill. 272.

There is a plain distinction between those clauses which prohibit an alienation, and those which forbid any change of title.    Oakes v. Manufacturers' Ins. Co., 131 Mass. 165; Savage v. Howard Ins. Co., 52 N. Y. 502–6; see, also, 59 Am. Dec., note bottom of page 308.

The condition is plain and must be interpreted according to the intention of the parties, gathered from the language employed. Dix et al. v. Mercantile Ins. Co., 22 Ill. 272; Home M. F. Ins. Co. v. Hauslein, 60 Ill. 521.

A contract of insurance is one of indemnity, is purely personal, and does not run with the thing insured. Wood on Ins., Vol. 1, p. 695, Sec. 329; Carpenter v. Providence, etc., Ins. Co., 16 Pet. (U. S.) 495; Finney v. Bedford Com. Ins. Co., 8 Met. (Mass.) 348; Arnold on Ins., Vol 1, p. 146 (note); Phillips on Ins., Vol. 1, p. 219; Duer on Ins., Vol. 2, Sec. 24.

Our courts have not condemned the condition in insurance contracts against " change of title or interest," etc., as odious, but to the contrary, have upheld such as reasonable and just. Dix et al. v. Mercantile Ins. Co., 22 Ill. 272; Commercial Union Ass. Co. v. Scammon, 102 Ill. 46; Milwaukee Mec. Mut. Ins. Co. v. Kitterlin, 24 Ill. App. 188.

Mr. Presiding Justice Sample delivered the opinion of the Court.

This case is submitted to this court on the following agreed state of facts, made up from the record. The policy of fire insurance was issued to Alice A. Miller, January 31, 1890, who died on March 7, 1890, the owner of the property insured. The company " had no notice of her death, and did not consent to a change of title to the property, if there was a change of title, nor waive any conditions of the policy." The property was destroyed by fire on the 1st day of November, 1890. The insured left surviving, she having died intestate, her husband and three minor children, as her only heirs at law.

" It is further agreed that this case turns upon the construction of the fifth clause of the policy of insurance, set out in this record, which is in the following words and figures :

*V. When property insured by this policy or any part thereof shall be alienated, or shall in any manner become incumbered, or in case of a change of title to the property insured, or any part thereof, or of any interest therein, without the consent of the company indorsed thereon, \* \* \* this policy shall at once cease to be binding upon this company.*

If the Appellate Court finds that the death of Alice Miller prior to the fire, worked such change of title to the property named in the policy as avoids legal liability of the defendant thereon, then this cause shall be affirmed. If it holds such death did not make such a change of title, then this cause shall be reversed and remanded."

As put by appellee's counsel, "there is but one question presented by this record and agreement, and that is, did the death of Alice A. Miller and the descent of the property to her heirs, work a change of title to the property within the meaning of the terms and conditions of the policy?" That a complete change of title was effected is unquestionable. The *quære* is, did the change of title, caused by the death of the owner, work a forfeiture of the policy within the meaning of the terms used? The language used that is immediately applicable to this question is set out in italics.

The death of the assured intestate did not operate as an "alienation" of the property insured. Usually that term applies to lands or some interest therein. 4 Kent, 441; 1 Washburn, 67; 2 Ibid. 251; Bouvier. In any event "by 'alienation' is meant, an act whereby one man transfers the property and possessions of land or other things to another." Boyd v. Cudderback, 31 Ill. 119. To alienate is to voluntarily part with the ownership by bargain and sale, or by gift or will. "Property not transferred or devised is not alienated according to the principle of the common law." Burbank, Adm., v. R. M. F. Ins. Co., 24 N. H. 550.

The term "change of title" is, of itself, a more comprehensive expression than the term "alienation." It includes all modes known to the law. The distinction between these expressions is noted in Sherwood v. Agricultural Ins. Co., 73 N. Y. 447, which is a case much like the one under consideration as to the terms of the policy and the other facts involved, and by a majority of the court is deemed to correctly lay down the law as applicable to the proper construction to be given to the provision of the policy in suit. It was there held that death effected a change of title to the property, which operated to forfeit the policy. The writer

of this opinion is inclined to the view that the words in the fifth clause, " without the consent of the company indorsed hereon," relate to and so qualify the phrase, "or in case of a change of title to the property insured," that " the change of title" contemplated by the contract was one of such a character, the company could indorse its consent thereto on the policy before the change occurred, and thereby preserve it in force without momentary lapse. This was not possible in case of change of title by death.

There is another view to take of this case.

The insured died about one month after the insurance was taken, and the personal property insured was burned nearly eight months thereafter. The contract of insurance does not insure the pro perty of the insured and that of her heirs, executors, administrators and assigns. The language of the policy in this respect is, " The German Insurance Company, in consideration of the conditions, limitations and requirements of this policy, hereinafter mentioned, and of twenty-four dollars, does insure Alice A. Miller for one year * * * against loss or damage by fire." Herein this case differs from that of Burbank v. R. M. F. Ins. Co., 24 N. H. 550, relied upon by appellant. In that case as here, it was contended by the company that death operated to defeat the policy. The court say : " It is also a pertinent inquiry, whether the provision in the policy insuring the assured, and his heirs, executors, administrators and assigns, would not be entirely nugatory if the death of the assured operates upon facts as an alienation of the property." It would appear, as suggested by the court, that such a clause would carry the insurance after the death of the assured for the benefit of heirs and legal representatives, as all policies should do, at least, for a specified time. It is, doubtless, generally supposed policies by their terms continue for the benefit of heirs and legal representatives. To so contract that the policy ceases to operate as an indemity immediately upon the death of the insured, with the company retaining the premium paid for carrying the risk, would certainly be unjust and work a great hardship, if loss should occur

before there was opportunity given to renew the insurance after burying the dead.

Those insured evidently do not contemplate such results or such practice. Where the heirs are numerous and scattered, in many instances it would be very difficult to effect insurance, and would be attended with some delay, especially if there were minors. In the meantime, the interest of the heirs as well as creditors, as to many classes of property, would be greatly jeopardized.

In this case, however, the husband, the natural guardian of the heirs, survived, and should have known the terms of the policy. He had about eight months within which to renew the insurance with the company. Doubtless he supposed it continued, and therein a hardship may result in holding there can be no recovery. But as it is said in the Sherwood case, *supra*, " even if such hardship existed it could not govern the construction of the policy. The proper mode of guarding against it would be by a provision in the contract."

The contract of insurance in this case was personal to the insured and her only. It did not create an additional interest or right in the property itself, so as to annex a value thereto transferable therewith. Wood on Ins., Vol. 1, p. 695. In the case of The Columbia Ins. Co. v. Lawrence, 10 Peters (U. S.) 512, it is said: " These policies are not insurances of the specific things mentioned to be insured, nor do such insurances attach to the realty, or in any manner go with the same as incident by any conveyance or assignment; but they are only special agreements with the persons insured against such loss or damage as they may sustain." In Carpenter v. The Prudence Ins. Co., 16 Peters (U. S. 502), it is said : " The society are to make satisfaction in case of loss by fire. To whom and for what loss are they to make satisfaction? Why, to the person insured and for the loss he may have sustained; for it can not properly be called insuring the thing, for there is no possibility of doing it; and therefore must mean insuring the person from damage."

There is a moral hazard in the insurance business. The character of the owner of the property is recognized as an element in taking risks. The appellee had the legal right to determine for whom it would take risks and likewise for whom it would maintain them. It did not contract to maintain the insurance for appellants. Hine v. Woodworth, 93 N. Y. 75. They have shown no right to maintain this action and therefore can not be permitted to recover the insurance provided for in the policy. Dix v. Ins. Co., 22 Ill. 272. The judgment is affirmed.